**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE:  BYRN | No. 1:23-mc-208-UNA |

**RESPONDENT BIONPHARMA'S OPPOSITION TO**
**DR. STEPHEN R. BYRN'S MOTION TO QUASH**


*Of Counsel*:

Andrew M. Alul
Luke T. Shannon
Roshan P. Shrestha, Ph.D.
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2800
Chicago, IL 60601
312-527-4000


Aaron M. Johnson
TAFT STETTINIUS & HOLLISTER LLP
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
612-977-8400


Christopher J. Kelly
MAYER BROWN LLP
Two Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2112
(650) 331-2000


Dated:  April 17, 2023

John C. Phillips, Jr. (#110)
Megan C. Haney (#5016)
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, DE  19806
(302) 655-4200
jcp@pmhdelaw.com
mch@pmhdelaw.com


*Attorneys for Respondent*
*Bionpharma Inc.*

## TABLE OF CONTENTS

TABLE OF ABBREVIATIONS ........................................................................................... iv

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

NATURE AND STAGE OF THE PROCEEDINGS .................................................... 3

RELEVANT FACTUAL BACKGROUND .................................................................. 5

I.      THE FIRST WAVE SUITS ................................................................................ 5

II.     THE SECOND WAVE SUIT ............................................................................. 7

III.    THE THIRD WAVE SUITS .............................................................................. 8

ARGUMENT ................................................................................................................... 11

I.      LEGAL STANDARD ....................................................................................... 11

II.     DR. BYRN'S MOTION SHOULD BE DENIED ........................................... 12

        A.      Bionpharma's Deposition Subpoena Is Proper .................................... 12

                1.      Dr. Byrn Has Information Highly Relevant to Bionpharma's Patent Defenses
                        ............................................................................................................ 12

                2.      Rule 45(d)(3)(A) Does Not Bar Bionpharma's Deposition Subpoena ........... 16

                3.      Bionpharma's Deposition Subpoena Falls Outside of Rule 45(d)(3)(B)(ii) ... 17

        B.      The Narrowed Category of Documents Bionpharma Seeks Is Discoverable ....... 19

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Amgen Inc. v. Sanofi*,
    872 F.3d 1367 (Fed. Cir. 2017) ........................................................ 15

*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed. Cir. 2010) ........................................................ 15

*Arkwright Mut. Ins. Co. v. Nat. Union. Fire Ins. Co. of Pa.*,
    148 F.R.D. 552 (S.D. W.Va. 1993) .................................................. 18

*Atlas Powder Co. v. E.I. Du Pont de Nemours & Co.*,
    750 F.2d 1569 (Fed. Cir. 1984) ........................................................ 14

*Biogen Int'l GmbH v. Mylan Pharm., Inc.*,
    18 F.4th 1333 (Fed. Cir. 2021) ........................................................ 14

*Blair v. McCollum*,
    No. 1:06-CV-1345-BBM, 2007 WL 9701730 (N.D. Ga. Jan. 4, 2007) .................... 18

*Buckhead Meat Co. v. AEBB of Greenwich Co.*,
    C.A. No. 19-16766 (KM), 2022 WL 16708988 (D.N.J. Feb. 10, 2022) ........... 11, 12

*Duardo v. City of Hackensack*,
    Case No. 17-cv-02308-WJM-ESK, 2021 WL 3508781 (D.N.J. Aug. 9, 2021) ............. 16

*Gerke v. Travelers Cas. Ins. Co. of Am.*,
    289 F.R.D. 316 (D. Or. 2013) .......................................................... 20

*Heller v. Met. Cas. Ins. Co.*,
    Civil No. 19-80448, 2020 WL 43299 (M.D. Fla. Jan. 3, 2020) ........................ 20

*In re TQ Delta*,
    C.A. No. 17-mc-328-RGA, 2018 WL 5033756 (D. Del. Oct. 17, 2018) ................. 11

*In re Wands*,
    858 F.2d 731 (Fed. Cir. 1988) ........................................................ 14

*Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*,
    886 F. Supp. 2d. 466 (D. Del. 2012).................................................. 12, 19

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*,
    32 F.3d 851 (3d Cir. 1994) ........................................................... 12, 19

*Schering Corp. v. Amgen Inc.*,
    No. Civ.A. 98-97 MMS, 1998 WL 552944 (D. Del. Aug. 4, 1988)......................... 17

*Solano-Sanchez v. State Farm Mut. Auto Ins. Co.*,
    C.A. No. 18-4016, 2020 WL 13660261 (E.D. Pa. Aug. 21, 2020)...................... 12, 19

**Rules**

Fed. R. Civ. P. 26(a)(2)(B) ............................................................ 20

Fed. R. Civ. P. 26(a)(2)(B)(vi) ............................................................................................ 20

Fed. R. Civ. P. 26(b)(4)(C) ................................................................................................. 20

Fed. R. Civ. P. 26(b)(4)(C)(i) ............................................................................................. 20

Fed. R. Civ. P. 45(d)(3)(A) ........................................................................................... 11, 16

Fed. R. Civ. P. 45(d)(3)(A)(iii) ............................................................................................ 16

Fed. R. Civ. P. 45(d)(3)(B)(i) ............................................................................................... 11

Fed. R. Civ. P. 45(d)(3)(B)(ii) .................................................................................... 11, 17, 19

Fed. R. Civ. P. 45(d)(3)(C) .................................................................................................. 18

## TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
|---|---|
| '008 patent | U.S. Patent No. 9,669,008 B1 (18-1962 D.I. 1-1, Compl. Ex. A) |
| '023 patent | U.S. Patent No. 11,040,023 B2 (D.I.[1] 89-1, FAC Ex. A) |
| '405 patent | U.S. Patent No. 11,141,405 B2 (21-1455 D.I. 1-1, Compl. Ex. A) |
| '442 patent | U.S. Patent No. 9,808,442 B2 (18-1962 D.I. 1-1, Compl. Ex. B) |
| '482 patent | U.S. Patent No. 10,786,482 B2 (20-1256 D.I. 49-1, Second Am. Compl. Ex. B) |
| '621 patent | U.S. Patent No. 10,918,621 B2 (20-1256 D.I. 49-1, Second Am. Compl. Ex. C) |
| '745 patent | U.S. Patent No. 10,039,745 B2 (18-1962 D.I. 1-1, Compl. Ex. C) |
| '868 patent | U.S. Patent No. 10,772,868 B2 (20-1256 D.I. 49-1, Second Am. Compl. Ex. A) |
| '987 patent | U.S. Patent No. 10,154,987 B2 (19-1067 D.I. 1-1, Compl. Ex. A) |
| Alkem | Alkem Laboratories Ltd., defendant in related C.A. No. 19-2100-MSG |
| ANDA | Abbreviated New Drug Application pursuant to 21 U.S.C. § 355(j) |
| Azurity | Azurity Pharmaceuticals, Inc., successor-in-interest to Silvergate Pharmaceuticals, Inc. and plaintiff in the related 21-1286 action |
| Azurity's 2d Cir. Emergency MTS | *Bionpharma Inc. v. CoreRx, Inc.*, No. 22-354 (2d Cir.), D.I. 14, Intervenor-Appellant's Memorandum in Support of Its Emergency Motion to Stay (attached hereto as Exhibit B) |
| Azurity's Byrn, Little Subpoena Objections | Azurity's Objections to Bionpharma's Fed. Rule Civ. P. 45 Subpoenas to Drs. Steven Little and Stephen Byrn (attached |

---

[1] All "D.I." references in this table and throughout this Opposition are to the related 21-1286 docket unless otherwise specified.

|  | hereto as Exhibit A) |
|---|---|
| Azurity's enalapril liquid patent family | '008, '442, '745, '987, '482, '868, '621, '023, and '405 patents |
| Azurity's First MTD Opposition | D.I. 48, Azurity's Brief in Opposition to Defendant's Motion to Dismiss |
| Azurity's Second Wave PI Motion | 20-1256 D.I. 67, Silvergate's Motion for Preliminary Injunction (*see also* 18-1962 D.I. 231) |
| Azurity's Second Wave PI Motion Opening Brief | 20-1256 D.I. 68, Silvergate's Opening Brief in Support of Its Motion for Preliminary Injunction (*see also* 18-1962 D.I. 232) |
| Azurity's TRO/PI Motion | D.I. 24, Azurity's Motion for Order to Show Cause for Temporary Restraining Order, Preliminary Injunction, and Other Emergent Relief |
| Bionpharma | Respondent Bionpharma Inc., defendant in the related 21-1286 action |
| Bionpharma's ANDA | Bionpharma's FDA approved ANDA No. 212408 |
| Bionpharma's ANDA product | The 1 mg/mL enalapril maleate oral solution described in Bionpharma's ANDA |
| Bionpharma's Second Wave PI Opposition | 20-1256 D.I. 77, Defendant Bionpharma's Brief in Opposition to Plaintiff Silvergate's Preliminary Injunction Motion |
| Bionpharma's SJ Leave Request Letter | D.I. 284, Defendant Bionpharma's Letter Requesting Leave to File for Summary Judgment Based on Collateral Estoppel |
| Buckton Declaration | D.I. 25-6, Declaration of Dr. Graham Buckton |
| Byrn Second Wave PI Opening Declaration | 20-1256 D.I. 71, Declaration of Stephen R. Byrn, Ph.D. in Support of Silvergate's Motion for Preliminary Injunction |
| Byrn Second Wave PI Reply Declaration | 20-1256 D.I. 85, Reply Declaration of Stephen R. Byrn, Ph.D. in Support of Silvergate's Motion for Preliminary Injunction |
| FAC or First Amended Complaint | D.I. 89, First Amended and Supplemental Complaint for Patent Infringement |
| FDA | United States Food and Drug Administration |
| First Wave Suits | *Silvergate Pharmaceuticals, Inc. v. Bionpharma Inc.*, C.A. Nos. 18-1962 and 19-1067 (D. Del.) |

| JSR | Joint status report |
|---|---|
| 8/20/21 Moreton Declaration | D.I. 42, August 20, 2021 Declaration of R. Christian Moreton, Ph.D. |
| MTS | Motion to stay |
| Novitium | Defendant Novitium Pharma, LLC, Bionpharma's ANDA product supplier. |
| Orange Book | The FDA's publication entitled "Approved Drug Products with Therapeutic Equivalence Evaluations" |
| PI | Preliminary injunction |
| PFR | Prayer for relief |
| PTO | United States Patent and Trademark Office |
| SAC | Second Amended Complaint |
| Second Wave Patents | '868, '482, and '621 patents |
| Second Wave Suit | *Silvergate Pharmaceuticals, Inc. v. Bionpharma Inc.*, C.A. No. 20-1256 (D. Del.) |
| Silvergate | Silvergate Pharmaceuticals, Inc., predecessor-in-interest to Plaintiff Azurity |
| Third Wave Suits | *Azurity Pharmaceuticals, Inc. v. Bionpharma Inc.*, C.A. No. 21-1286-MSG (D. Del.) (consolidated) |
| TRO | Temporary restraining order |

Respondent Bionpharma respectfully submits the instant Opposition to Dr. Stephen R. Byrn's Motion to Quash (23-mc-208 D.I. 1, "Dr. Byrn's Motion").

## INTRODUCTION AND SUMMARY OF ARGUMENT

Dr. Byrn's Motion is related to the Third Wave in Azurity's series of lawsuits alleging that Bionpharma's ANDA No. 212408 and the 1 mg/ml enalapril maleate oral solution described therein—approved by the FDA in August of 2021 and commercially marketed by Bionpharma since then as generic to Azurity's Epaned® antihypertensive prescription drug product—infringe Azurity's enalapril oral liquid patent family.  The First Wave Suits, which Azurity began filing in December of 2018, and which involved Azurity's first generation enalapril oral liquid patents that covered Epaned® specifically (First Wave Patents), were resolved in Bionpharma's favor after a 5-day bench trial before Judge Stark, who entered judgment of non-infringement in Bionpharma's favor, which was summarily affirmed on appeal.  Because of Judge Stark's decision in the First Wave Suits, Azurity conceded that it could not prove infringement in the Second Wave Suit, which involved broader patents that Azurity began securing in September of 2020 (Second Wave Patents) that covered enalapril liquids well beyond what Azurity actually invented (Epaned®), and Azurity agreed to dismissal of that suit with prejudice.

On June 22, 2021, Azurity began instituting the instant Third Wave Suits, which involve Azurity's third generation enalapril liquid patents (Third Wave Patents), which—as with the Second Wave Patents—are broad and cover enalapril liquids well beyond Epaned®.  As Azurity has admitted, the First, Second, and Third Wave Patents are all related (*i.e.*, in the same priority chain) and share the same specification.  D.I. 259, Azurity's Answer ¶ 126.

Dr. Byrn served as Azurity's formulation expert during the First and Second Wave Suits, where he opined on ***both*** infringement and invalidity.  During the course of his testimony on

infringement at trial in the First Wave Suits, and in declarations he submitted in support of a PI motion Azurity filed in the final few weeks of the Second Wave Suit (Azurity's Second Wave PI Motion), Dr. Byrn made a number of admissions that support Bionpharma's contention that Azurity's Second and Third Wave Patents cover enalapril liquids that Azurity simply did not invent, and that form the centerpiece of Bionpharma's 35 U.S.C. § 112(a) invalidity defenses (lack of written description and non-enablement) in the Third Wave Suits.  For example, Dr. Byrn testified at the First Wave Suits trial that paraben-preserved enalapril liquids exemplified in the common specification (the Example C liquids) are all unstable and therefore inoperable.  18-1962 D.I. 194, Sealed Trial Tr. Vol. A, Byrn 297:18-298:9 (Dr. Byrn discussing the Example C liquids and explaining that "the stability, the pHs are also wrong, so it's unstable.  The formulation is unstable.  It's not an operative formulation."); 18-1962 D.I. 196, Sealed Trial Tr. Vol. B, Byrn 428:23-429:6 ("Q. I believe you testified yesterday that the[ Example C] formulations were inoperable because of their pHs; correct?  A. That was my understanding; that the pHs outside the range are inoperable.").  While Azurity's First Wave Patents did not cover paraben-preserved enalapril liquids, this admission is directly and highly relevant to Bionpharma's § 112 defenses in the instant suits, as the asserted patent claims here all cover stable paraben-preserved enalapril liquids,[1] and many of the asserted claims cover liquids that are not restricted by pH.[2]

Bionpharma has relied extensively on Dr. Byrn's admissions in the Third Wave Suits, including in connection with its successful opposition to Azurity's TRO/PI Motion seeking to

---

[1] As did all of the asserted claims in the Alkem suit, which this Court recently found invalid for lack of written description because, as the Court found, paraben-preserved enalapril liquids stable for at least 12 months at refrigerated conditions are nowhere described in Example C or anywhere else in the common specification.  19-2100 D.I. 213, Mem. Op. at 46-51.

[2] *See* D.I. 284, Bionpharma's SJ Leave Request Ltr. at 1-2; D.I. 89-1, FAC Ex. A, '023 patent at claims; 21-1455 D.I. 1-1, Compl. Ex. A, '405 patent at claims.

remove Bionpharma's ANDA product from the market.  For precisely that reason—and likely because Judge Stark found Dr. Byrn's credibility undermined at the First Wave Suits trial[3]—Azurity jettisoned Dr. Byrn as its expert after the conclusion of the First and Second Wave Suits, and Azurity and Dr. Byrn now seek to deprive Bionpharma of the opportunity to depose Dr. Byrn on opinions he rendered on behalf of Azurity in prior related litigation that support Bionpharma's defenses in the instant suits.

*To be clear*, Bionpharma has no intention of questioning Dr. Byrn regarding confidential communications between him and Azurity's counsel that took place in the First and Second Wave Suits.  Bionpharma simply seeks to question Dr. Byrn regarding testimony he gave at the First Wave Suits trial that is highly relevant to Bionpharma's § 112 defenses.  Further, at trial in support of its invalidity defenses, Bionpharma intends to rely on opinions propounded by Dr. Byrn in his declarations filed in support of Azurity's Second Wave PI Motion (20-1256 D.I. 71, 85), but on which he was never deposed.  Bionpharma should be allowed to elicit and develop these opinions in a deposition so that it may avoid hearsay objections at trial.  Finally, Bionpharma has narrowed its document subpoena to only cover any retention agreements he has entered into with Azurity involving enalapril—a request that probably totals one or two documents, ones that cannot be considered privileged and pose no burden on him to produce.

For these reasons, explained more fully below, Bionpharma respectfully requests that Dr. Byrn's Motion be denied.

## NATURE AND STAGE OF THE PROCEEDINGS

After the First and Second Wave Suits failed in this District, Azurity instituted the 21-1286 action in the District of New Jersey on June 22, 2021 (as No. 3:21-cv-12870), asserting that

---

[3] 18-1962 D.I. 257, Op. at 66 n.12.

Bionpharma's ANDA and ANDA product infringe the '023 patent.  D.I. 1, Compl.  The case was ultimately transferred to this District.  D.I. 57.  On October 15, 2021, Azurity instituted the 21-1455 action asserting the '405 patent.  21-1455 D.I. 1, Compl.  On February 17, 2022, Bionpharma answered Azurity's operative complaints in the instant Third Wave Suits, and counterclaimed for declaratory judgment of non-infringement and invalidity and for antitrust violations.  D.I. 135; 21-1455 D.I. 46.  Azurity moved to dismiss Bionpharma's antitrust counterclaims, and, shortly thereafter, Bionpharma moved to dismiss Azurity's patent claims pursuant to Rule 12(c).  D.I. 148, 172; 21-1455 D.I. 60.

On October 3, 2022, Azurity sued Bionpharma's new ANDA product supplier, Novitium, in the District of New Jersey, but that case was also ultimately transferred to this Court.  23-163 D.I. 40.  On December 7, 2022, this Court stayed the Third Wave Suits pending resolution of the parties' motions to dismiss.  D.I. 250, Order.  On February 7, 2023, this Court denied Azurity's alternative motion to bifurcate and stay Bionpharma's antitrust claims, and the stay was lifted.  D.I. 256, Text Order; D.I. 262, 2/7/23 Status Hr'g Tr. 12:10-14.  On March 27, 2023, the Court consolidated the transferred Novitium case and the instant Third Wave Suits under one schedule.  D.I. 293.  The parties are currently proceeding through fact discovery.

On March 8, 2023, Bionpharma served Dr. Byrn with a subpoena to testify and produce documents.  D.I. 283.  During a telephonic meet and confer held on March 28, 2023, counsel for Azurity, who also represents Dr. Byrn, indicated that Dr. Byrn would be moving to quash the subpoena in the Southern District of Indiana, and that Azurity would be seeking a protective order from this Court.  Dr. Byrn's Mot. at 3.  Dr. Byrn filed the instant Motion on April 3, 2022.  *Id.*

## RELEVANT FACTUAL BACKGROUND

### I.    THE FIRST WAVE SUITS[4]

Azurity filed the First Wave Suits starting in December of 2018, asserting that Bionpharma's ANDA and the product described therein infringe Azurity's First Wave Patents. 18-1962 D.I. 257, Op. at 1; 18-1962 D.I. 1, Compl.; 19-1067 D.I. 1, Compl.  The claims of Azurity's First Wave Patents are directed to:  (1) a group of enalapril liquids that contain citric acid and sodium citrate as a buffer system at specific concentrations, sodium benzoate as a preservative at specific concentrations, and that are stable for 12 months at refrigerated conditions; and (2) methods of treatment using those liquids.  18-1962 D.I. 1-1, Compl. Exs. A-C, '008, '442, '745 patents at claims; 19-1067 D.I. 1-1, Compl. Ex. A, '987 patent at claims; 18-1962 D.I. 257, Op. at 15-19.  Bionpharma had designed its ANDA product completely around Azurity's First Wave Patents, including by omitting a buffer entirely, and by utilizing methylparaben-propylparaben preservative system as an alternative to the claimed sodium benzoate preservative. 18-1962 D.I. 257, Op. at 7-9.  Bionpharma did not challenge the validity of the First Wave Patents, but disputed infringement.  Bionpharma argued that Azurity was barred from asserting DOE infringement because, *inter alia*, methylparaben and propylparaben were disclosed in the common specification as suitable alternatives to the claimed sodium benzoate but never claimed, and therefore dedicated to the public.[5]  *Id.* at 68-71.

---

[4] Dr. Byrn takes issue with Bionpharma's characterization of the prior litigation between Azurity and Bionpharma "as two 'waves' of litigation," and asserts that it is merely "for dramatic effect." Dr. Byrn's Mot. at 1 n.1.  It is unclear why Dr. Byrn—a non-party to the three waves of litigation between Azurity and Bionpharma—would feel the need to take issue with the way Bionpharma describes the history of litigation between the parties, but his comments are as inaccurate as they are irrelevant.

[5] *See* 18-1962 D.I. 257, Op. at 51, 68-71 (Judge Stark's summary of the law on disclosure-dedication and findings in favor of Bionpharma).  Azurity has recently relied on Bionpharma's disclosure-dedication defense from the First Wave Suits to argue that Bionpharma is "judicially estopped" in these Third Wave Suits from arguing "that the specification lacks written description

Judge Stark held a five-day bench trial on February 1-5, 2021.  At trial, Dr. Byrn—Azurity's formulation and infringement expert—testified in response to Bionpharma's disclosure-dedication defense that enalapril liquids preserved with parabens that were exemplified in the common specification were unstable and therefore inoperable.  Specifically, on direct examination, Dr. Byrn explained that for the paraben-preserved enalapril liquids described in Example C, "the stability, the pHs are also wrong, so it's unstable. The formulation is unstable.  It's not an operative formulation."  18-1962 D.I. 194, Sealed Trial Tr. Vol. A, Byrn 297:18-298:9.   On cross-examination, he reaffirmed his opinion:

> Q.  I believe you testified yesterday that the[ Example C] formulations were inoperable because of their pHs; correct?
>
> A.  That was my understanding; that the pHs outside the range are inoperable.

18-1962 D.I. 196, Sealed Trial Tr. Vol. B, Byrn 428:23-429:6.  With respect to the pHs necessary for stable (and therefore operable) enalapril liquids, Dr. Byrn testified that the "optimum range" for enalapril stability is "3 to 3.5," 18-1962 D.I. 193, Sealed Trial Tr. Vol. A, Byrn 245:19-22 (*see also id.* at 216:3-9, 244:8-16).  On April 27, 2021, Judge Stark issued his Opinion finding that Azurity failed to prove that Bionpharma's ANDA product infringed the asserted claims of the First Wave Patents, including because the methylparaben-propylparaben substitute Bionpharma used for the claimed sodium benzoate preservative was disclosed in the common specification, and, thus, dedicated.  18-1962 D.I. 257, Op. at 68-71.  Final judgment in Bionpharma's favor was entered shortly thereafter, and was summarily affirmed on appeal.  D. Del. 18-1962 D.I. 270, Final

---

of parabens." D.I. 287, Azurity's SJ Leave Request Opp'n at 2.  Azurity's argument is wrong. While Bionpharma has argued that methylparaben and propylparaben are adequately disclosed in the common specification as suitable alternatives to sodium benzoate, Bionpharma has also ***always*** maintained—going back to the First Wave Suits—that ***paraben-preserved enalapril liquids that are stable for at least 12 months at refrigerated conditions*** are not described in the common specification.  18-1962 D.I. 245, Bionpharma's Second Wave PI Opp'n at 9-11.

J.; *Azurity Pharm., Inc. v. Bionpharma Inc.*, No. 2021-1926, 1927, 2022 WL 703903 (Fed. Cir. Mar. 9, 2022).

## II.     THE SECOND WAVE SUIT

Shortly after Bionpharma filed its ANDA, Azurity began filing continuation patent applications seeking considerably broader and different patent claim coverage, and eventually secured issuance of the Second Wave Patents in late 2020 and early 2021, which were the subject of Azurity's Second Wave Suit.  20-1256 D.I. 49, SAC.  The claims of the Second Wave Patents covered stable enalapril liquids well beyond Epaned®, including enalapril liquids with buffers beyond citrate and preservatives beyond sodium benzoate (such as parabens), and with excipient concentrations beyond those claimed in the First Wave Patents.  20-1256 D.I. 49-1, SAC Exs. A-C, Second Wave Patents at claims; 20-1256 D.I. 68, Azurity's Second Wave PI Mot. Opening Br. at 4-5.  After the conclusion of trial in the First Wave Suits, but before Judge Stark had rendered his decision, Azurity filed its Second Wave PI Motion on March 31, 2021 seeking to enjoin any launch of Bionpharma's ANDA product with its Second Wave Patents following the April 30, 2021 expiration of the 30-month stay (or an earlier decision from Judge Stark in Bionpharma's favor).[6]  20-1256 D.I. 51, 3/5/21 Azurity Ltr.; 20-1256 D.I. 67, Azurity's Second Wave PI Mot.

In support of its Second Wave PI Motion, Azurity filed an opening declaration from Dr. Byrn, who opined on the state of the art as of the priority date claimed for Azurity's enalapril liquid patent family:

> The active ingredient of the oral liquid formulations recited in the '868 and '621 Asserted Claims – enalapril – is known to have stability issues once dissolved into a solution.  [18-1962] D.I. 193 at 81:16-82:10, 84:10-85:3.  Thus, a liquid formulation of enalapril would

---

[6] Azurity's Second Wave PI Motion also involved one claim from the First Wave Patents (claim 7 of the '745 patent), and was thus also filed in the First Wave Suits, but it predominately involved Azurity's Second Wave Patents.  *See* 18-1962 D.I. 232, Azurity's Second Wave PI Mot. Opening Br. at 1.

generally be expected to have a short shelf-life (e.g., on the order of weeks to only a few months). In fact, Silvergate's previous enalapril product, Epaned® Kit (a powder for reconstitution), was only stable for 60 days upon reconstitution into solution. *Id.*

20-1256 D.I. 71, Byrn Second Wave PI Opening Decl. ¶ 15.

Bionpharma opposed Azurity's Second Wave PI Motion predominantly on invalidity grounds (lack of written description, non-enablement, and obviousness), and relied extensively on Dr. Byrn's First Wave Suits' trial testimony and Second Wave PI Motion Opening Declaration in support of its invalidity defenses. 20-1256 D.I. 77, Bionpharma's Second Wave PI Opp'n. at 3-14; *see also id.* at 5-6, 7, 9-10 (instances where Bionpharma relied on Dr. Byrn's trial testimony and declaration). In response, Azurity filed a reply declaration from Dr. Byrn where he responded to Bionpharma's invalidity arguments and opined that the asserted claims from the Second Wave Patent were not invalid. 20-1256 D.I. 85, Byrn Second Wave PI Reply Decl.

On April 27, 2021—just two days before the April 29, 2021 scheduled hearing for Azurity's Second Wave PI Motion—Judge Stark rendered his decision in the First Wave Suits finding, *inter alia*, that Azurity had failed to prove the existence of a buffer in Bionpharma's ANDA product. 18-1962 D.I. 257, Op. at 64-66. That finding doomed Azurity's infringement case in the Second Wave Suit, as all of the claims of the Second Wave Patents require a buffer. 20-1256 D.I. 49-1, SAC Exs. A-C, Second Wave Patents at claims; D.I. 48, Azurity's First MTD Opp'n at 5 n.9. Azurity thus withdrew its Second Wave PI Motion and agreed to dismissal of the Second Wave Suit. 20-1256 D.I. 90, 106. Bionpharma never had the opportunity to depose Dr. Byrn on the opinions he expressed in his Opening and Reply Second Wave PI declarations.

## III.   THE THIRD WAVE SUITS

As was the case with the Second Wave Patents' claims, the claims of the Third Wave Patents cover enalapril liquids well beyond Epaned®, including stable buffer-less enalapril liquids preserved with compounds well beyond sodium benzoate, such as parabens. D.I. 89, FAC Ex. A,

'023 Patent at claims; 21-1455 D.I. 1, Compl. Ex. A, '405 patent at claims; D.I. 181, Azurity's 12(c) Mot. Opp'n at 8-10.  Shortly after Bionpharma launched its ANDA product on or about August 17, 2021, Azurity filed its TRO/PI motion in the 21-1286 suit (involving the '023 patent) seeking to remove Bionpharma's ANDA product from the market.  D.I. 24.  However, instead of submitting a declaration from Dr. Byrn in support of its emergency motion, Azurity switched experts and served a declaration from Dr. Graham Buckton in support of its motion.[7]  D.I. 25-6, Buckton Decl.

Because of the similarity between the claims of the Second and Third Wave Patents, Bionpharma's TRO/PI Motion Opposition raised essentially the same lack of written description, non-enablement, and obviousness defenses that Bionpharma had raised in opposition to Azurity's Second Wave PI Motion.  *Compare* D.I. 38, Bionpharma's TRO/PI Mot. Opp'n at 10-26, *with* 20-1256 D.I. 77, Bionpharma's Second Wave PI Opp'n. at 3-14.  Importantly, Bionpharma once again *extensively* relied upon Dr. Byrn's trial testimony and Second Wave PI Opening Declaration in support of both its § 112 defenses:

> As Azurity and its expert in the First and Second Wave Suits, Dr. Byrn, have admitted, the POSA would know that enalapril is inherently unstable in liquid formulations and whether any given enalapril liquid is capable of being stable for at least 12 months or longer is entirely unpredictable.  [D.I. 38, Bionpharma's TRO/PI Mot. Opp'n 11.]
>
> In a declaration, Dr. Byrn, explained that enalapril is known to have stability issues once dissolved into a solution," and that "a liquid formulation of enalapril would generally be expected to have a short shelf-life (e.g., on the order of weeks to only a few months)."  [*Id*. at 12 (quoting from 20-1256 D.I. 71, Byrn Second Wave PI Opening Decl. ¶ 15).]
>
> . . . .
>
> During trial in the First Wave Suits, Azurity's expert, Dr. Byrn, ***repeatedly characterized the Example C formulations as inoperable***, meaning that, based on the accelerated data

---

[7] Azurity has recently revealed that it will switch experts *yet a second time*.  Even though Dr. Buckton was its expert in connection with its failed TRO/PI Motion, Azurity has recently indicated that he will be replaced during the expert phase of these Third Wave Suits with Dr. Steven Little, the expert it took to trial in the Alkem suit.  See Ex. A, Azurity's Byrn, Little Subpoena Objections.

presented, those formulations would likely not meet the stability requirements of the claims,…  [*Id*. at 14 (emphasis in original).]

. . . .

[A]s Azurity and [Dr. Byrn] conceded in the First Wave Suits, the accelerated data provided for the paraben preserved enalapril liquids of Example C would convince a POSA that those liquids would likely ***not be stable*** for 12 months at refrigerated conditions.  [*Id*. at 18-19 (emphasis in original).]

. . . .

As Azurity and its experts have admitted, enalapril was known to be stable only within a very narrow pH range (3-3.5).  [*Id*. at 19 (citing and quoting from, *inter alia*, 20-1256 D.I. 71, Byrn Second Wave PI Opening Decl. ¶ 18).]

Bionpharma also extensively relied on Dr. Byrn's opinions from the First and Second Wave Suits

during the November 10, 2021 hearing on Azurity's TRO/PI Motion:

Here is Azurity's expert[] in the first wave suits, the one they jettisoned, Dr. Steven Byrn. . . .  [D.I. 96, 11/10/21 Hr'g Tr. at 66:9-10 (going on to quote from 20-1256 D.I. 71, Byrn Second Wave PI Opening Decl. ¶ 15).]

. . . .

And, of course, Dr. Byrn's declaration was submitted earlier this year and he fist pounded [sic, "opined"] that enalapril was known to be unstable and unpredictable.  [*Id*. at 68:5-7.]

. . . .

But that is not true, Your Honor. Because the data, the Example C data shows two of those formulations, C-2 and C-3 have pH of 3.7, and both Azurity and its expert Dr. Byrn admitted that all of the Example C liquids would likely not be stable under refrigerated conditions for 12 months or longer.  [*Id*. at 74:5-10.]

. . . .

And here is Dr. Byrn at trial.  On cross-examination, I pinned him down on this.  I would like to take you back to PTX-3 and specifically the Example C formulations we were looking at.  [*Id*. at 74:20-23 (going on to quote from 18-1962 D.I. 196, Sealed Trial Tr. Vol. B, Byrn 428:23-429:6).]

At the conclusion of the November 10, 2021 hearing, Judge Stark denied Azurity's TRO/PI

Motion, finding that "[Azurity] ha[d] not shown . . . a likelihood of success on the merits" because

"[Bionpharma] ha[d] raised substantial questions of validity of the ['023 patent]" by "present[ing]

persuasive evidence to support at least two of [its] invalidity defenses [(written description and non-enablement)]." D.I. 96, 11/10/21 Hr'g Tr. at 103:2-24. Importantly, Judge Stark made clear on the record that his findings on Bionpharma's written description defense were based on "stipulations filed in this and earlier litigation between the parties, ***statements made to me including during the first wave trial***, and statements made to the FDA by Plaintiff." *Id.* at 105:10-20 (emphasis added).

## ARGUMENT

### I.   LEGAL STANDARD

"Discovery sought via a subpoena issued pursuant to Rule 45 must fall within the scope of discovery permissible under Rule 26(b)." *Buckhead Meat Co. v. AEBB of Greenwich Co.*, C.A. No. 19-16766 (KM), 2022 WL 16708988, at *2 (D.N.J. Feb. 10, 2022). "'On timely motion, the issuing court must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply, . . . (iii) requires disclosure of privileged or other protected matter . . . or (iv) subjects a person to undue burden.'" *In re TQ Delta*, C.A. No. 17-mc-328-RGA, 2018 WL 5033756, at *1 (D. Del. Oct. 17, 2018) (quoting FED. R. CIV. P. 45(d)(3)(A) in relevant part). "In contrast, a court may quash or modify a subpoena where it requires 'disclosing a trade secret or other confidential research, development, or commercial information,'" *Buckhead*, 2022 WL 16708988, at *2 (quoting FED. R. CIV. P. 45(d)(3)(B)(i)), or where it requires "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party," Fed. R. Civ. P. 45(d)(3)(B)(ii). "The party seeking to quash the subpoena bears the burden of demonstrating that the requirements of Rule 45 are satisfied." *TQ Delta*, 2018 WL 5033756, at *1 (internal quotations omitted). "Courts have described this as a heavy burden." *Id.* (internal quotations omitted).

## II.    DR. BYRN'S MOTION SHOULD BE DENIED

### A.    Bionpharma's Deposition Subpoena Is Proper

As explained below, Bionpharma does not seek through its subpoena to depose Dr. Byrn on confidential communications between him and Azurity, or to secure new opinions from him. Instead, Bionpharma seeks to depose Dr. Byrn on opinions *he has already given on behalf of Azurity* in connection with the related First and Second Wave Suits that are indisputably relevant to Bionpharma's invalidity defenses in the instant Third Wave Suits.

### 1.    Dr. Byrn Has Information Highly Relevant to Bionpharma's Patent Defenses

Dr. Byrn asserts that "Bionpharma served a subpoena seeking a deposition . . . from Dr. Byrn regarding his communications with Azurity about the [First and Second Wave Suits]." This is entirely incorrect. First, Dr. Byrn does not have standing to rely on the attorney work product doctrine protections embodied in Rules 26(b)(3)(A) and 26(b)(4) as a basis to refuse to comply with Bionpharma's subpoena.[8] Nevertheless, because Azurity itself has stated that it intends to move for a protective order on this issue, Bionpharma hereby states unequivocally that it does not intend to depose Dr. Byrn on confidential communications between Dr. Byrn and Azurity's attorneys. This should be the end of the issue, and should also moot Azurity's protective order motion.[9]

---

[8] *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 866 (3d Cir. 1994) ("[T]he work product doctrine belongs to the professional, rather than the client."); *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d. 466, 471 (D. Del. 2012) ("[T]he work product protection belongs to the attorney."); *Solano-Sanchez v. State Farm Mut. Auto Ins. Co.*, C.A. No. 18-4016, 2020 WL 13660261, at *1 n.1 (E.D. Pa. Aug. 21, 2020) (motion to quash denied where movant "d[id] not claim her own privilege or privacy interest in the subpoenaed information.").

[9] As this Court has already noted, "[g]enerally, only the party or person to whom [a] subpoena is directed has standing to move to quash or otherwise object to [it]." 21-196 D.I. 169, Order ¶ 3 (internal quotations omitted). However, "a party to an action has standing to quash or modify a non-party subpoena where the party seeking to quash or modify the subpoena claims a privilege or privacy interest in the subpoenaed information." *Buckhead*, 2022 WL 16708988, at *2; *see also* 21-196 D.I. 169, Order ¶ 3. With Bionpharma's representation that it does not intend to depose

Instead, Bionpharma seeks to depose Dr. Byrn on opinions he propounded at trial in the First Wave Suits, and in declarations he authored and that were filed in support of Azurity's Second Wave PI Motion, as outlined in the Relevant Factual Background Section, *supra*. This includes Dr. Byrn's opinions that the paraben-preserved enalapril liquids exemplified in the common specification (Example C) are all unstable and therefore inoperable, and that pHs beyond 3-3.5 would lead to instability. 18-1962 D.I. 194, Sealed Trial Tr. Vol. A, Byrn 297:18-298:9; 18-1962 D.I. 196, Sealed Trial Tr. Vol. B, Byrn 428:23-429:6. The relevance of these opinions to Bionpharma's § 112 defenses in these Third Wave Suits cannot be overstated: ***all*** of the asserted claims of the Third Wave Patents cover stable enalapril liquids preserved with parabens, and ***all*** of the asserted claims include within their scope enalapril liquids with pHs beyond 3-3.5. *See* D.I. 89-1, FAC Ex. A, '023 patent at claims; 21-1455 D.I. 1, Compl. Ex. A, '405 patent at claims; D.I. 284, Bionpharma's SJ Leave Request Ltr. at 1 n.4; *id*. at 2. Dr. Byrn's admission about the Example C liquids further supports and confirms this Court's finding in the Alkem case that the common specification does not describe paraben-preserved enalapril liquids that are stable for at least 12 months at refrigerated conditions. Alkem case D.I. 213, Mem. Op. at 47, 50-51. Dr. Byrn's admissions about Example C and the instability of enalapril liquids with pHs beyond 3-3.5 also support Bionpharma's non-enablement defense, as they show that the common specification fails to provide a POSA with direction or guidance to determine which paraben-preserved enalapril liquids would be stable, relegating the POSA to an iterative trial-and-error process of preparing numerous paraben-preserved enalapril liquids and testing them for stability—*i.e.*, undue

---

Dr. Byrn regarding confidential communications between him and Azurity's attorneys, Azurity has no other lawful basis for a protective order. Moreover, because Azurity's attorneys also represent Dr. Byrn, any concern about questions implicating privileged information are obviated by the fact that Azurity's counsel may object and instruct the witness not to answer.

experimentation. *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988) (factors to consider when evaluating "undue experimentation" include "the quantity of experimentation necessary, . . . [and] the amount of direction or guidance presented" in the specification)*; see also Atlas Powder Co. v. E.I. Du Pont de Nemours & Co.*, 750 F.2d 1569, 1576 (Fed. Cir. 1984) ("[I]f the number of inoperative combinations becomes significant, and in effect forces one of ordinary skill in the art to experiment unduly in order to practice the claimed invention, the claims might indeed be invalid."). Indeed, as explained above, Bionpharma relied heavily on Dr. Byrn's First Wave Suits' trial testimony and Second Wave PI Opening and Reply Declarations in opposing Azurity's TRO/PI Motion in these Third Wave Suits, and Judge Stark clearly relied on Dr. Byrn's opinions in denying Azurity's TRO/PI Motion. *See* Relevant Factual Background § III (Third Wave Suits), *supra*; D.I. 96, 11/10/21 Hr'g Tr. at 105:10-20 (Judge Stark explaining that his findings on Bionpharma's written description defense were based on "stipulations filed in this and earlier litigation between these parties, ***statements made to me including during the first wave trial***, and statements made to the FDA by Plaintiff" (emphasis added)).

Bionpharma never had an opportunity to depose Dr. Byrn regarding the opinions he expressed in his declarations in support of Azurity's Second Wave PI Motion, some of which are ***highly*** relevant to Bionpharma's § 112 defenses. For instance, Dr. Byrn's opinion that enalapril was known in the prior art to be unpredictable and inherently unstable in water, and that the closest prior art—Azurity's predecessor Epaned® Kit product—was known to be stable for about 60 days when reconstituted (20-1256 D.I. 71, Byrn Second Wave PI Opening Decl. ¶ 15), sets the stage for Bionpharma's written description defenses. "Whether a claimed invention satisfies the written-description requirement of § 112 will depend on the nature of the invention." *Biogen Int'l GmbH v. Mylan Pharm., Inc.*, 18 F.4th 1333, 1342 (Fed. Cir. 2021). "[W]ritten description is judged

14

based on the state of the art as of the priority date." *Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1373 (Fed. Cir. 2017). "Specifically, the level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010). Thus, Dr. Byrn's opinions regarding the state of the prior art and the nature and predictability of enalapril in water are highly relevant to Bionpharma's written description defense and Bionpharma should be afforded the opportunity to depose him on those opinions.

Moreover, Dr. Byrn's argument that he "never offered ***any*** opinion regarding validity or invalidity in the [First or Second Wave Suits]" (Dr. Byrn's Mot. at 11 (emphasis in original)) is demonstrably false—the bulk of his Second Wave PI Reply Declaration was devoted to responding to Bionpharma's invalidity arguments for the asserted claims of the Second Wave Patents. 20-1256 D.I. 85, Byrn Second Wave PI Reply Decl. ¶¶ 5-32. As can be seen, Dr. Byrn opined on Bionpharma's obviousness, written description, and non-enablement defenses for the Second Wave Patents, which—as explained at page 9, *supra*—are very similar to Bionpharma's invalidity defenses for the Third Wave Patents in the instant suits, as evidenced by the PI briefing in both waves of suits. Again, Bionpharma never had an opportunity to depose Dr. Byrn on those opinions, which are highly relevant to Bionpharma's patent invalidity defenses in these Third Wave Suits.[10]

---

[10] Dr. Byrn incorrectly argues that he has no discoverable information relevant to Bionpharma's antitrust claims. Dr. Byrn's Mot. at 13-14. However, Dr. Byrn has opined on the validity of the Second Wave Patents in his Second Wave PI Reply Declaration, and Bionpharma has alleged in support of its monopolization claim an anticompetitive scheme perpetrated by Azurity that includes the filing of the sham Second Wave Suits, which involved patents that Azurity knew or should have known are invalid (because they claimed well beyond what Azurity invented). *See* D.I. 135, CCLS ¶¶ 99-111, 165-69, 236-44. Similarly, Bionpharma's attempted monopolization claim involves the filing of the instant sham Third Wave Suits, which involve Bionpharma's contention that Azurity knew or should have known that the Third Wave Patents are invalid (for, again, claiming well beyond what Azurity invented). *Id.* ¶¶ 131-45, 170-74, 245-52. Dr. Byrn's deposition will clearly will yield information relevant to the invalidity of the Third Wave Patents.

### 2.      Rule 45(d)(3)(A) Does Not Bar Bionpharma's Deposition Subpoena

The first two provisions of Rule 45(d)(3)(A)—(i) fails to allow reasonable time to comply; and (ii) requires compliance beyond the geographical limits of Rule 45(c)—do not apply (nor does Dr. Byrn raise them).  And, as explained above, because Bionpharma does not seek privileged or otherwise protected information from Dr. Byrn, Rule 45(d)(3)(A)(iii) does not bar Bionpharma's deposition subpoena.

Dr. Byrn does argue, however, that requiring him to appear for a deposition would pose an undue burden on him.  Dr. Byrn's Mot. at 15-16.  "An undue burden will be found to exist when the subpoena is unreasonable or oppressive."  *Duardo v. City of Hackensack*, Case No. 17-cv-02308-WJM-ESK, 2021 WL 3508781, at *2 (D.N.J. Aug. 9, 2021).  Further,

> In determining whether to quash a subpoena for a nonparty deposition, a court may consider several factors, including:  a party's need for the deposition; the nature and importance of the litigation; the relevance of the deposition; the time period covered by the request for a deposition; and the burden imposed on the subpoenaed nonparty.

*Id.*  Bionpharma has significant need for Dr. Byrn's deposition because, as explained above, his opinions on behalf of Azurity in prior related litigation (the First and Second Wave Suits) are highly and directly relevant to Bionpharma's patent invalidity defenses in the Third Wave Suits (and are, thus in turn, relevant to Bionpharma's antitrust claims).  There can be no dispute that the Third Wave Suits—which involve patent and antitrust claims between two competitors in the market for prescription enalapril liquid products—are important, as Azurity accuses Bionpharma of willfully infringing its Third Wave Patents and has stated that it seeks a trebled damages award of "tens of millions of dollars" from Bionpharma.  D.I. 89, FAC at PFR ¶ i; 21-1455 D.I. 1, Compl. at PFR ¶ i; Ex. B, Azurity's 2d Cir. Emergency MTS at 2.

Bionpharma seeks to depose Dr. Byrn regarding opinions he propounded at the February 1-5, 2021 First Wave Suits trial and in his Second Wave PI Opening and Reply Declarations, which

were filed in late March/early April 2021.  Thus, the time period covered by Bionpharma's deposition subpoena is from approximately two years ago.  Dr. Byrn complains that this forces him "to expend significant time refreshing his memory of a careful analysis that he conducted years ago involving patents, volumes of documents, and scientific articles."  Dr. Byrn's Mot. at 15-16.  But, as this Court well knows, two years is short in the timeline of an ANDA-related patent dispute (the parties have been litigating Bionpharma's ANDA and Azurity's enalapril liquid patent family in this District for nearly 4.5 years), and spending a few hours refreshing his recollection as to opinions he propounded two years ago in an attempt to keep Bionpharma's ANDA product off the market should be no tall order for a person who:  (1) styles himself as "a renowned pharmaceutical formulation and chemistry expert"; (2) has purportedly won an award for his work on enalapril liquids; and (3) admits he was already compensated for the opinions that Bionpharma seeks to depose him on.  *Id.* at 3-4.  Moreover, there can be no doubt that Dr. Byrn's counsel, Wilson Sonsini—the same counsel that has represented Azurity throughout the First, Second, and Third Wave Suits—will spend time assisting Dr. Byrn in his preparation, which will ease any alleged "burden" on him.  Dr. Byrn's undue burden arguments should be rejected.

### 3.  Bionpharma's Deposition Subpoena Falls Outside of Rule 45(d)(3)(B)(ii)

At pages 11-13 of his Motion, Dr. Byrn seeks to invoke the protections of Rule 45(d)(3)(B)(ii) for unretained experts.  A court "*may*, on motion, quash or modify the subpoena if it requires: . . . (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party."  FED. R. CIV. P. 45(d)(3)(B)(ii) (emphasis added).  Rule 45(d)(3)(B)(ii) does not apply for two independent reasons.  First, Bionpharma seeks to depose Dr. Byrn regarding a study he carried out at ***Azurity's direction*** during the First and Second Wave Suits.  *Schering Corp. v. Amgen Inc.*, No. Civ.A. 98-97 MMS, 1998 WL 552944, at *1 (D. Del. Aug. 4, 1988) (finding that

45(d)(3)(B)(ii) applied because neither party to the litigation had retained the subpoenaed experts who provided declarations in connection with a patent interference proceeding).  Indeed, Dr. Byrn "has not demonstrated (or even mentioned) that the information sought by [Bionpharma] is . . . resulting from [Dr. Byrn's] study made not at the request of a party."  *Blair v. McCollum*, No. 1:06-CV-1345-BBM, 2007 WL 9701730, at *1 (N.D. Ga. Jan. 4, 2007).

Second, as explained above, the opinions that Bionpharma seeks to depose Dr. Byrn on are ones he has already rendered in related litigation that directly relate to the specific issues in dispute—what is described and enabled in the common specification.  Again, these are opinions for which Dr. Byrn has already been compensated.  Dr. Byrn's Mot. at 4; 20-1256 D.I. 71, Byrn Second Wave PI Opening Decl. ¶ 3.  Thus, the concerns underlying Rule 45(d)(3)(B)(ii), as detailed in the Advisory Committee Notes thereto, are not implicated.  *See Arkwright Mut. Ins. Co. v. Nat. Union. Fire Ins. Co. of Pa.*, 148 F.R.D. 552, 557 (S.D. W.Va. 1993) ("Murray suggests that Mr. Kendrick and his company were fully compensated at the time they performed their investigation and submitted their report.  Given this prior compensation, Mr. Kendrick will not suffer a taking of intellectual property by appearing at the noticed deposition and testifying to the opinions he has already formulated at Murray's or its insurance carrier's expense." (internal quotations omitted)).

Finally, even if Dr. Byrn does qualify for the protections of Rule 45(d)(3)(B)(ii) as an unretained expert, Bionpharma respectfully requests that the Court exercise its discretion to deny him that protection, as Bionpharma has substantial need for Dr. Byrn's testimony.  *See* FED. R. CIV. P. 45(d)(3)(C).  To be clear, Bionpharma ***does not seek*** to require Dr. Byrn to formulate or develop new opinions.  Bionpharma seeks to depose Dr. Byrn only on opinions he has already given and been compensated for in related litigation between the parties involving issues that are

currently in dispute (whether the common specification describes and enables stable paraben-preserved liquids or liquids with a pH beyond 3-3.5). Rule 45(d)(3)(B)(ii) Advisory Committee Notes (1991 Amendment, Subdivision (c)) ("[T]he court's discretion in these matters should be informed by[, *inter alia*,] . . . the difference between testifying to a previously formed or expressed opinion and forming a new one." (internal quotations and citation omitted)). Bionpharma has already extensively relied on Dr. Byrn's opinions in these Third Wave Suits, and Judge Stark's ruling denying Azurity's TRO/PI Motion in these suits is based at least partially on those opinions, as explained above. And while Bionpharma will certainly call its own expert at trial to opine on how the common specification fails to describe and enable numerous enalapril liquids falling within the asserted claims, Bionpharma respectfully submits that a jury will find those opinions exceptionally convincing coming from one of Azurity's own experts. Azurity should not be allowed to continually deep-six experts who have provided opinions that support Bionpharma's defenses, as it has done twice already (Drs. Byrn and Buckton, *see* footnote 7, *supra*).

### B. The Narrowed Category of Documents Bionpharma Seeks Is Discoverable

Dr. Byrn spends 4 pages of his Motion needlessly arguing over documents that Bionpharma is no longer seeking from him. Dr. Byrn's Mot. at 7-11. As he admits, during the meet and confer process, to minimize any burden to Dr. Byrn, Bionpharma narrowed its document subpoena to seek only a small category of documents that likely do not number more than one or two—his retention agreements with Azurity relating to enalapril. *Id.* at 5. He argues that Bionpharma should have attempted to secure this production from Azurity first to minimize any burden on him, but he fails to explain how producing what likely totals no more than one or two documents constitutes a burden on him. *See id.* at 5-6. Next, the Rule 26 protections he raises (*id.* at 6) are not his to invoke—they are Azurity's counsel's. *Rhone-Poulenc*, 32 F.3d at 866; *Magnetar*, 886 F. Supp. 2d. at 471; *Solano-Sanchez*, 2020 WL 13660261, at *1 n.1.

But even if the Rule 26 protections he raises were his to invoke, Rule 26(b)(4)(C)(i) expressly exempts the expert retention agreements Bionpharma seeks. *See, e.g., Gerke v. Travelers Cas. Ins. Co. of Am.*, 289 F.R.D. 316, 330 (D. Or. 2013) ("Rule 26(b)(4)(C)(i) excepts from non-disclosure of [sic] information and communications that 'relate to compensation for the expert's study or testimony.' Nothing in or about [the expert's] consulting agreement suggests the exception should not apply to the entire content of the consulting agreement."); *Heller v. Met. Cas. Ins. Co.*, Civil No. 19-80448, 2020 WL 43299, at *2 (M.D. Fla. Jan. 3, 2020) (ordering the production of expert retainer agreement and noting that "retainer agreements are not treated as protected work product in federal court." (internal quotations and citations omitted)). Contrary to Dr. Byrn's suggestion (Dr. Byrn's Mot. at 6), the agreements are relevant to his potential bias and Rule 26(a)(2)(B)(vi) does not preclude this discovery.[11] Indeed, such expert retention agreements do not even qualify for the protections of Rule 26(b)(4)(C), as they are not "***required*** to provide a report under Rule 26(a)(2)(B)" (emphasis added).

## CONCLUSION

Bionpharma respectfully requests that Dr. Byrn's Motion be denied.


Dated: April 17, 2023

/s/John C. Phillips, Jr.
John C. Phillips, Jr. (#110)
Megan C. Haney (#5016)
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street

---

[11] *See* Rule 26(b)(4) Advisory Committee Notes (2010 Amendments) ("[U]nder Rule 26(b)(4)(C)(i) attorney-expert communications regarding compensation for the expert's study or testimony may be the subject of discovery. ***In some cases, this discovery may go beyond the disclosure requirement in Rule 26(a)(2)(B)(vi).*** It is not limited to compensation for work forming the opinions to be expressed, but extends to all compensation for the study and testimony provided in relation to the action. . . . ***The objective is to permit full inquiry into such potential sources of bias.***" (emphasis added)).

Wilmington, DE  19806
(302) 655-4200
jcp@pmhdelaw.com
mch@pmhdelaw.com

*Of Counsel*:

Andrew M. Alul
Luke T. Shannon
Roshan P. Shrestha, Ph.D.
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2800
Chicago, IL 60601
312-527-4000
aalul@taftlaw.com
lshannon@taftlaw.com
rshrestha@taftlaw.com

Aaron M. Johnson
TAFT STETTINIUS & HOLLISTER LLP
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
612-977-8400
ajohnson@taftlaw.com

Christopher J. Kelly
MAYER BROWN LLP
Two Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2112
(650) 331-2000
cjkelly@mayerbrown.com

*Attorneys for Respondent Bionpharma Inc.*